UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON KINNICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-02563-TAB-SEB |
| ) | |
| MED-1 SOLUTIONS, LLC an Indiana limited ) | |
| liability company, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

**I.     Introduction**

Plaintiff Jason Kinnick and his wife filed a Chapter 7 bankruptcy petition on March 12, 2019.  Defendant Med-1 Solutions, LLC sent Kinnick a collection letter on April 25, 2019, demanding payment of debts allegedly owed to Community Health Network that were included in Kinnick's bankruptcy.  Kinnick sued Med-1 for violating §§ 1692e and 1692c(c) the Fair Debt Collection Practices Act by attempting to collect a debt that was subject to bankruptcy and for which he had demanded that collection communications cease.  Kinnick also now argues that Med-1 violated § 1692e(3) because there was no meaningful attorney review of his account prior to sending the collection letter.  Both parties moved for summary judgment.  Questions of fact remain as to whether Kinnick was misled by Med-1's letter or whether Med-1 maintained reasonable procedures to avoid the error.  However, for reasons stated below, Med-1's motion for summary judgment [Filing No. 64] is granted as to Kinnick's §§ 1692(c)(3) and 1692e(3) claims.  Accordingly, Kinnick's motion for summary judgment [Filing No. 60] is denied, and Med-1's motion [Filing No. 64] is granted in part and denied in part.

## II.     Background[1]

On February 8, 2019, Kinnick and his wife had their attorney send a notice of attorney representation to Med-1, to notify Med-1 that they were represented by counsel in connection with any debts Med-1 was trying to collect from them, and that collection communication should cease. [Filing No. 61-4, at ECF p. 3.] Med-1 received the February 8, 2019, faxed notice of attorney representation. [Filing No. 61-2, at ECF p. 3.] On March 12, 2019, Kinnick and his wife filed a Chapter 7 bankruptcy petition. [Filing No. 1-3.] Among the debts listed on the petition were various debts allegedly owed for medical services at Community Health Network, as well as several other debts being collected by Defendant Med-1 at that time, in relation to Kinnick's wife. [Filing No. 1-3, at ECF p. 3-8.] Both Community Health and Med-1 received notice of the Kinnicks's bankruptcy petition in March. [Filing No. 1-4; Filing No. 61-2, at ECF p. 3.] At that time, Med-1 did not have any active accounts for Kinnick. [Filing No. 65-7, at ECF p. 1-2; Filing No. 65-8, at ECF p. 53-54.]

On April 24, 2019, Med-1 obtained or was assigned for collection two accounts from Community Health Gallahue Behavioral allegedly owed by Kinnick for services he received prior to the bankruptcy petition. [Filing No. 61-6, at ECF p. 7-8.] Med-1 allegedly has a policy to never dun a debtor for a debt that is subject to a bankruptcy. [Filing No. 65-1, at ECF p. 34 ("Bankruptcy accounts—cannot work"); Filing No. 65-1, at ECF p. 63 ("If an RP states that they have filed bankruptcy, we must cease all collection efforts and send the account to the legal department to verify."); Filing No. 65-3, at ECF p. 1-3 ("NEW Bankruptcy and Deceased Scrub Procedure" dated 12/16/2014); Filing No. 65-4, at ECF p. 1-3 ("Bankruptcy Process &

---

[1] These background facts are either undisputed or assumed as true for the purpose of ruling on the summary judgment motions.

Dispositions Procedure, 4/26/2017").] Med-1 also had a policy to run a bankruptcy scrub before sending an initial dunning letter. [Filing No. 65-3, at ECF p. 1 ("Purpose: To ensure that all Med1 bad debt placements are sent to Lexis Nexis for bankruptcy and deceased scrubs, and return files loaded before letters are requested and sent.").]

However, at some point in early 2019, Med-1 created a new process for certain Community Health Network debts that "tied together" multiple accounts owed by one debtor to Community Health, so that one single letter would be sent for all debts owed to the same creditor at the same time. [Filing No. 65-6, at ECF p. 10-11.] In doing so, Med-1 created a unique set of automated commands for Community Health Gallahue accounts that contained a programming mistake, which caused the Gallahue letters to be sent the day before the bankruptcy scrub. [Filing No. 65-6, at ECF p. 14.] Thus, on April 25, 2019, Med-1 sent a letter to Kinnick signed by attorney Richard Huston demanding payment of debts allegedly owed to Community Health that were included in Kinnick's bankruptcy petition. [Filing No. 1-5.] Med-1 ran the bankruptcy scrub that same day and learned that Kinnick's debts were subject to bankruptcy. [Filing No. 13-1, at ECF p. 1.] Med-1 subsequently ceased all collection activity for the debt at issue. [Filing No. 13-1, at ECF p. 1-2.]

Kinnick received Med-1's letter and was angered and concerned that he was receiving collection letters while he was in the middle of a bankruptcy. [Filing No. 61-1, at ECF p. 19.]. Receipt of the letter impacted Kinnick physically, causing extreme frustration, anxiety, hopelessness, and dread. [Filing No. 61-1, at ECF p. 22-23.] Kinnick's anxiety continued under his bankruptcy discharge over a month later, on June 11, 2019. [Filing No. 61-1, at ECF p. 23.] On June 25, 2019, Kinnick filed his complaint against Med-1 for violating the FDCPA. [Filing No. 1.] Both Kinnick and Med-1 moved for summary judgment. [Filing No. 60; Filing No. 64.]

3

### III.   Discussion

In their cross-motions for summary judgment, Kinnick and Med-1 each argue that they are entitled to summary judgment as a matter of law on Kinnick's FDCPA claims.  Kinnick argues that the uncontroverted evidence shows Med-1's actions—attempting to collect a debt not owed due to bankruptcy—violated § 1692e and § 1692(c)c of the FDCPA and caused the type of harm outlawed by Congress's enactment of the FDCPA.  [Filing No. 61, at ECF p. 2.]  Med-1 argues Kinnick's claims "fail as a matter of law for multiple independent and overlapping reasons."  [Filing No. 66, at ECF p. 4.]  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56.  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  With cross-motions, the court's review of the record requires that the court construe all inferences in favor of the party against whom the motion under consideration is made.

*Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 842 (S.D. Ind. 2018) (internal citations, quotation marks, and brackets omitted).

### A.   Article III Standing

Before reaching the merits of the parties' underlying arguments, the Court must address the threshold issue of Article III standing.

> Standing is a threshold requirement because it derives from the Constitution's limit on federal courts' authority to resolve "cases" and "controversies."  The plaintiff, as the party invoking the court's jurisdiction, must establish the elements of standing: she must prove that she has suffered a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely to be redressed by a favorable judicial decision.

4

*Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (internal citation omitted). The Seventh Circuit recently issued a series of decisions that narrowed the circumstances in which an FDCPA plaintiff has standing to sue. *See Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020); *Bazile*, 983 F.3d at 280; *Nettles v. Midland Funding, LLC*, 983 F.3d 896, 900 (7th Cir. 2020); *Spuhler v. State Collection Servs., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020); *Smith v. GC Services Limited Partnership,* 986 F.3d 708, 711 (7th Cir. 2021); *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1044-45 (7th Cir. 2021); *Markakos v. Medicredit, Inc.*, No. 20-2351, __ F.3d __, __, 2021 WL 1937267, at *3 (7th Cir. May 14, 2021); *see also Patterson v. Howe*, No. 1:16-cv-3364, 2021 WL 1124610, at *1-3 (S.D. Ind. 2021) (surveying recent cases and granting a motion to reconsider in light of them).

The Court previously addressed similar arguments on standing in this case its October 15, 2019, order denying Med-1's motion to dismiss. *Kinnick v. Med-1 Solutions, LLC*, No. 1:19-cv-2563-TAB-SEB, 410 F. Supp. 3d 939 (S.D. Ind. 2019). At that time, the Court concluded Med-1's alleged conduct was more than a bare procedural violation and that Kinnick's complaint alleged that he personally was misled and negatively impacted by the collection letter. *Id.* at 943. While at the pleading stage, a plaintiff must only " 'plausibly suggest' each element of standing, with the court drawing all reasonable inferences in the plaintiff's favor." *Bazille*, 983 F.3d at 278 (citation omitted). However, mere allegations alone do not stand for long. *Id*. Rather, "[t]o demonstrate standing at the summary judgment stage of litigation, the plaintiffs must set forth by affidavit or other evidence specific facts demonstrating that they have suffered a concrete and particularized injury that is both fairly traceable to the challenged conduct and

5

likely redressable by a judicial decision" *Spuhler*, 983 F.3d at 284 (internal citations and quotation marks omitted).

Now, at summary judgment, Med-1 argues Kinnick does not have standing to bring his claims because Kinnick "did not rely on the alleged FDCPA violations in a way that caused him to make a detrimental act regarding the debt." [Filing No. 66, at ECF p. 24.] Kinnick maintains that Med-1's actions "harmed" him because it "destroyed the 'fresh start' Congress intended that individuals, such as Mr. Kinnick, receive when it enacted the Bankruptcy Code, it made him doubt the effectiveness of his bankruptcy, his decision to hire his attorney, and it was also a significant source of tension between him and his wife." [Filing No. 60, at ECF p. 2.]

Mere annoyance or intimidation by the letter is not enough. *See, e.g., Gunn*, 982 F.3d at 1071-72 ("Many people are annoyed to learn that governmental action may put endangered species at risk or cut down an old-growth forest. Yet the Supreme Court has held that, to litigate over such acts in federal court, the plaintiff must show a concrete and particularized loss, not infuriation or disgust. . . . [T]he Supreme Court has never thought that having one's nose out of joint and one's dander up creates a case or controversy."). Neither is doubt and confusion. *See, e.g., Brunett*, 982 F.3d at 1068 ("A debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion. . . . But the state of confusion is not itself an injury.").

Similarly, the Seventh Circuit clarified in its recent *Pennell* decision that allegations of stress, without more, fall short. *See Pennell*, 990 F.3d at 1045 ("Pennell alleged in her complaint that Global Trust's dunning letter caused stress and confusion. But we made clear in Brunett that the state of confusion is not itself an injury. Nor does stress by itself with no physical manifestation and no qualified medical diagnosis amount to a concrete harm." (Internal citations and quotation marks omitted)). The Seventh Circuit concluded that *Pennell* "failed to show that

receiving Global Trust's dunning letter led her to change her course of action of or put her in harm's way. Instead, she merely pointed to a statutory violation, which is not enough to establish standing under Article III." *Id.* *See also Brunett*, 982 F.3d at 1069 ("Talk is cheap, but where's the concrete harm?  That's what the Constitution requires, and Brunett does not allege any.").

This Court recently dismissed a plaintiff's claims for lack of injury in fact and lack of standing in a case with similar allegations as this one. *See Pucillo v. National Credit Systems, Inc.*, No. 1:19-cv-285-TWP-DML, 2021 WL 1061191, at *4 (S.D. Ind. Mar. 19, 2021). Pucillo alleged in his amended complaint, using nearly identical language as Kinnick, that the collection company's actions confused and alarmed him and " 'caused him to believe that his exercise of his rights, through filing bankruptcy, may have been futile and that he did not have the right to a fresh start that Congress had granted him under the Bankruptcy Code, as well as his rights under the FDCPA.' " *Id.* Chief Judge Pratt concluded: "The Seventh Circuit has been clear that, without more, confusion, stress, concern, and fear are not enough to support a concrete injury in FDCPA Section 1692e and Section 1692c cases. This is all that Pucillo has alleged. Therefore, his, claims must be dismissed because of a lack of injury in fact and lack of standing." *Id.*

As in *Pucillo*, the bare allegations in Kinnick's complaint fall short of stating the necessary allegations of a concrete injury. Kinnick used the same general argument about fearing he did not have the right to a fresh start, in addition to his claim that the letter made him doubt the effectiveness of his bankruptcy and that it was a significant source of tension with his wife. [Filing No. 1, at ECF p. 3.] However, at the summary judgment stage, courts peer beyond mere complaint allegations. *See, e.g., Chicago Wine Co. v. Holcomb*, No. 1:19-cv-2785-TWP-DML, __ F. Supp. 3d. __, __, 2021 WL 1196175, at *3 (S.D. Ind. Mar. 30, 2021) ("The purpose

7

of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." (Internal citations and quotation marks omitted)).

In his summary judgment briefing and deposition testimony, Kinnick elaborated on the harm he allegedly incurred because of Med-1's letter. Kinnick specified that his frustration over Med-1's letter impacted him physically, interrupting his sleep, causing extreme frustration, anxiety, hopelessness, and dread. [Filing No. 61, at ECF p. 8.] In support, Kinnick cites to his deposition testimony, in which he stated that he "panicked" and that the letter gave him a lot of anxiety. [Filing No. 61-1, at ECF p. 20.] Kinnick stated that it caused him "extreme anxiety" and that he "had to go to the doctor[2] and tell them about it[.]" [Filing No. 61-1, at ECF p. 21.] Kinnick elaborated:

> But, yeah, it caused me stress staying up at night, you know, freaking out that, you know, my financial future is going to be ruined when I'm trying to get through a bankruptcy. It made me feel like, you know, is my attorney filing this stuff right. I panicked. It was definitely panic mode. It was just scary, man.

[Filing No. 61-1, at ECF p. 22.] When asked to describe the panic, Kinnick explained that he felt dread, anxiousness, nervous, and just felt hopeless. [Filing No. 61-1, at ECF p. 23.] Furthermore, Kinnick claimed that the letter caused him to experience these issues— sleeplessness, arguments, and extreme anxiety, frustration, and anger at his bankruptcy

---

[2] Kinnick's testimony regarding visiting a doctor is somewhat unclear. He stated he visited a nurse practitioner before his attorney interrupted and said, "We're going to stipulate that we're not relying on any medical experts. We're just relying on the deposition testimony today. We're going to stipulate that we're not going to produce any of that." [Filing No. 61-1, at ECF p. 21.] A bit later in the deposition transcript, Med-1's counsel tried to clarify Kinnick's statement regarding whether he discussed feeling dread, nervousness, and anxiousness with medical providers. [Filing No. 61-1, at ECF p. 23.] Kinnick responded, "I might have mentioned it, yeah." [Filing No. 61-1, at ECF p. 23.] Counsel then asked, "But am I correct in understanding that you are not claiming that those medical visits were necessitated by this letter, or those medical bills should be paid by my client, correct?" [Filing No. 61-1, at ECF p. 23.] Kinnick replied, "I've been going to the doctor forever. Yeah, it's fine." [Filing No. 61-1, at ECF p. 23.]

8

counsel—for over a month, until his debts were ultimately discharged. [Filing No. 61-1, at ECF p. 22.]

The only evidence Kinnick relies on to support his claim that he experienced concrete harm from Med-1's letter is his own testimony. To rely on his testimony on emotional distress, it must be more than merely conclusory. *See, e.g., Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 698 (7th Cir. 2011) (finding the plaintiff's testimony on emotional distress sufficient to preclude summary judgment where "[a]lthough not extensive, the plaintiffs' testimony is not conclusory. They described their emotional turmoil in reasonable detail and explained what they believe to be the source of that turmoil."). *Cf. Kasten v. LVNV Funding, LLC*, No. 19-cv-428, 2021 WL 1102163, at *6 (E.D. Wis. Mar. 23, 2021) ("The Seventh Circuit has found that, absent facts so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions, a plaintiff whose own testimony is the only proof of emotional damages must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." (Internal citation and quotation marks omitted)); *Rosen v. MLO Acquisitions LLC*, __ F. Supp. 3d __, __, 2020 WL 7129018, at *5 (N.D. Ind. Dec. 4, 2020) (Rosen's testimony provided detailed, "sufficiently substantial explanation" of Rosen's distress caused by FDCPA violations to survive the defendant's motion for summary judgment because testimony included more than just conclusory "buzzwords").

While Kinnick does not provide as detailed testimony as in *Kasten*, his testimony is not merely conclusory. Kinnick's testimony regarding his loss of sleep and feeling hopeless and dread is also more detailed and concrete than the allegations described in *Pucillo* or the allegation of a statutory violation with nothing more than stress and confusion in *Pennell*. Other courts have explained that allegations of loss of sleep amount to physical manifestations that

make the allegations of emotional distress real, not abstract, even if not necessarily significant. *See, e.g., Crowder v. Andreu, Palma, Lavin & Solic, PLLC*, No. 2:19-cv-820-SPC-NPM, 2021 WL 1338767, at *4 (M.D. Fla. Apr. 9, 2021) ("There must be something from which the Court can conclude Crowder's alleged injury is real, and not abstract. Any number of facts might do the trick (e.g., loss of sleep or inability to concentrate). But with just the conclusory statement that a statutory violation cased an injury, there is no standing." (Internal citations and quotation marks omitted)); *Rivas v. Midland Funding, LLC*, 842 Fed. App'x 483, 486 (11th Cir. 2021) (loss of sleep and extreme stress injuries sufficiently tangible and concrete to confer Article III standing); *Waldrop v. LTS Collections Inc.*, 2020 WL 6545772, at *3 (D. Ariz. Nov. 6, 2020) (allegations of fear, anxiety, stress, mental anguish, and loss of sleep, loss of appetite, and headaches sufficient to establish a concrete injury for purposes of determining damages under the FDCPA).

Thus, while Kinnick's allegations of harm do not necessarily indicate substantial emotional harm, his allegations are distinguishable from the recent cases cited above, where plaintiffs failed to tie the alleged FDCPA violations to any detrimental step or concrete harm. For these reasons, Kinnick has alleged a sufficiently concrete emotional harm and shown that an Article III case or controversy exists in order to establish standing for his claims.[3]

---

[3] Kinnick also briefly argues, in his response to Med-1's cross motion for summary judgment (which also doubles as his reply brief to his own summary judgment motion), that Med-1 intruded on his seclusion or invaded his privacy, citing to *Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2019), *cert. denied*, __ S. Ct. __, 2021 WL 1521010 (U.S. Apr. 19, 2021). [Filing No. 67, at ECF p. 25-26.] However, similar to the plaintiff in *Pennell*, 990 F.3d at 1045, Kinnick did not allege an invasion of his privacy rights in his complaint or mention such a claim in his initial summary judgment motion or brief. Kinnick argues that while he did not use the exact words "right to privacy," he set forth factual allegations that Med-1 sent him unwanted collection communications which angered and harmed him, destroying his fresh start, and that all of this harms necessarily involved an invasion of his privacy. [Filing No. 74, at ECF p. 2.] He further argues that the Seventh Circuit failed to recognize that the consumer in *Pennell* had alleged all

10

**B.      Attempt to collect debt subject to bankruptcy in violation of 15 U.S.C. § 1692e**

Kinnick contends that Med-1's letter violated § 1692e the FDCPA as a matter of law, because the Seventh Circuit has long affirmed that demanding payment of a debt that is no longer owed, due to bankruptcy, is false and/or deceptive or misleading. [Filing No. 61, at ECF p. 13.] Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." In support of his claim, Kinnick cites *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728-30 (7th Cir. 2004). In *Randolph*, the Seventh Circuit stated:

> A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is "false" in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not. A debt collector's false statement is presumptively wrongful under the Fair Debt Collect Practices Act, *see*, 15 U.S.C. § 1692e(2)(A), even if the speaker is ignorant of the truth; but a debt collector that exercises care to avoid making false statements has a defense under § 1692k(c).

*Randolph,* 368 F.3d at 728. See also *Buckley v. Afni, Inc.*, 133 F. Supp. 3d 1140, 1150-51 (S.D. Ind. 2016) ("The test for determining whether there has been a violation is objective, turning on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. The debt collector's subjective intent or belief is not dispositive. § 1692e applies even when a false representation was unintentional." (Internal citations and quotation marks omitted)).

---

the facts to constitute an invasion of privacy and, thus, an injury in fact. [Filing No. 74, at ECF p. 2.] For a variety of reasons, this argument fails. As in *Pennell*, Kinnick has raised it too late, and bringing it up for the first time in his response/reply is insufficient. *Id.* ("When courts analyze standing, allegations matter. . . . Pennell did not complain [in her operative complaint] that her injuries included any perceived invasion of privacy." (Internal citation and quotation marks omitted)). And the Court decline's Kinnick's invitation to interpret the facts in *Pennell* differently than the Seventh Circuit.

11

Med-1 argues that it is entitled to judgment as a matter of law on this claim because Kinnick failed to present extrinsic evidence to prove that the unsophisticated consumer would be deceived by the letter at issue. [Filing No. 66, at ECF p. 17-18.] Kinnick, however, argues that the letter in this case falls into the category of a plainly false statement, which requires no evidentiary support. [Filing No. 67, at ECF p. 20.] In addition, Kinnick contends that his "unwavering testimony" contrasts with other cases, such as *Buckley*, since Kinnick believed he owed the debts and may still have to pay for them because, in his mind, perhaps something went wrong with his bankruptcy. [Filing No. 67, at ECF p. 22.] Kinnick testified that he felt stress and freaked out wondering if his financial future would be ruined and made him doubt whether his attorney "filed this stuff right." [Filing No. 61-1, at ECF p. 22.] However, when viewing the facts in a light favorable to Med-1, Kinnick stated that he called his attorney immediately because he "knew" he was not supposed to be receiving the collection letter. [Filing No. 61-1, at ECF p. 16.] Kinnick testified, "I knew I was in the automatic stay. And I wasn't supposed to be receiving efforts to collect a debt while I was going through my bankruptcy." [Filing No. 61-1, at ECF p. 17.] Based on these facts, it is unclear whether Med-1's letter truly deceived or misled Kinnick. Whether Kinnick was misled by Med-1's letter is a material fact in genuine dispute. *See, e.g., Buckley*, 133 F. Supp. 3d at 1152 ("Viewing the evidence in a light favorable to each party, the Court cannot determine whether Buckley, an unsophisticated consumer, was confused and misled by Afni's collection letter. Whether Buckley was mislead [sic] by Afni's letter is a material fact in genuine dispute. Accordingly, Buckley's claim that Afni violated § 1692e is best suited for trial.").

Alternatively, Med-1 contends that even if it violated the FDCPA, any violation was the result of a bona fide error. [Filing No. 66, at ECF p. 28-30.] To succeed with a bona fide error

defense, Med-1 must demonstrate by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of reasonable procedures to prevent the error. *See* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). Med-1 argues that it maintained reasonable procedures to avoid the error, citing to designated evidence of various Med-1 policies for how to handle notice of a bankruptcy. [Filing No. 66, at ECF p. 28-29.] Kinnick disputes Med-1's contention that it had procedures in place reasonably designed to avoid erroneously sending a collection letter for a debt subject to bankruptcy—which is exactly what ultimately occurred here. [Filing No. 61, at ECF p. 17.] Kinnick argues that the procedures described in Med-1's manual [Filing No. 65-1] should be ignored because it "was clearly dated after Med-1 sent Mr. Kinnick the letter at issue [on April 25, 2019.]" [Filing No. 67, at ECF p. 27.] The manual does not state when it was created but notes it was revised on October 22, 2019. [Filing No. 65-1.] Med-1 also provided a "Bankruptcy Process and Dispositions Procedure" dated April 26, 2017, which describes the procedure employees should take when they receive a bankruptcy notification in the mail or are informed by a debtor that they have filed bankruptcy. [Filing No. 65-4.] In addition, Med-1 provided a document titled "NEW Bankruptcy and Deceased Scrub Procedure" dated December 16, 2014, which contains step-by-step instructions on what to do when Med-1 receives a bankruptcy notice. [Filing No. 65-3.]

Genuine issues of material fact remain as to whether Med-1 maintained procedures reasonably adapted to avoid the error, which precludes summary judgment on this claim. *See, e.g., Keisler v. Encore Receivable Management, Inc.*, No. 1:06-cv-0912-LJM-WTL, 2008 WL

1774173, at *6 (S.D. Ind. Apr. 17, 2008) ("With respect to Encore's bona fide error defense, at a minimum, there is a material question of fact on whether the violation was unintentional and whether the Encore's procedures were reasonably adapted to avoid any such error."); *Wehrheim v. James M. Secrest, P.C.*, No. IP 00-1328-C-T/K, 2002 WL 31427515, at *4 (S.D. Ind. Oct. 9, 2002) ("The affidavit and supplemental affidavit establish that Defendant had certain procedures in place to avoid clerical errors in complaints, but the court cannot find that it has shown as a matter of law that its procedures were reasonably adapted to avoid such errors.  Whether certain procedures were reasonably adapted to avoid the error at issue seems to be a factual matter requiring a determination by the trier of fact in all but the rarest of cases.  This is not such a case.").  *Cf. Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (district court found via bench trial that debt collector had reasonable procedures in place to avoid erroneous collection efforts). Therefore, for all these reasons, summary judgment is denied as to Kinnick's §1692e claim.

    **C.**    **Attempt to collect debt after Kinnick demanded communications cease in violation of 15 U.S.C. 1692c(c)**

Kinnick next argues that Med-1 violated § 1692c(c) of the FDCPA, which prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay.  Section 1692c(c) provides that if a consumer notifies a debt collector that he wishes the debt collector cease communications with him, the debt collector "shall not communicate further with the consumer with respect to such debt."  15 U.S.C. § 1692c(c). Kinnick claims Med-1 had notice that Kinnick demanded collection communications cease due to (1) his bankruptcy filing and (2) his earlier debt dispute letter.  [Filing No. 61, at ECF p. 14.]

First, Kinnick contends that by filing bankruptcy, he put his creditors—and their debt collectors—on written notice that he refused to pay his debts.  [Filing No. 61, at ECF p. 14.]

Kinnick's bankruptcy filing was a matter of public record and on his credit reports, and readily discoverable via a bankruptcy "scrub" system. (Indeed, as noted above, after Med-1 sent the April 25, 2019, debt collection letter, it performed such a scrub and discovered Kinnick's bankruptcy.) However, Med-1 notes that the Med-1 debts listed in the Kinnicks' bankruptcy notice were listed as the debts of Kinnick's wife only, so the bankruptcy notice could not have provided notice that Kinnick refused to pay a debt. [Filing No. 66, at ECF p. 17.] In addition, Med-1 argues that even if the bankruptcy petition had listed Med-1 as one of Kinnick's creditors, the bankruptcy notice does not satisfy the requirements of § 1692c(c), which requires a consumer to notify the debt collector. [Filing No. 66, at ECF p. 17.] A bankruptcy court is not a consumer. *See, e.g., Shelley v. Ocwen Loan Servicing, LLC*, No. 1:13-cv-506-RLY-DKL, 2013 WL 4584649, at *8 (S.D. Ind. Aug. 28, 2013) ("Plaintiffs rely on a notice issued by a bankruptcy court, which, by the plain language of the statute, is not sufficient to provide notice.").

Second, Kinnick argues Med-1 was already on notice that Kinnick demanded collection communications cease because his attorney told Med-1 as much in a February 2019 letter prior to the bankruptcy, which Med-1 received and read. [Filing No. 61, at ECF p. 14.] Med-1, however, argues that Kinnick's § 1692c(c) claim fails as a matter of law because Med-1 had no active accounts for Kinnick at the time it received the February 8, 2019, debt dispute letter from Kinnick's attorney. [Filing No. 66, at ECF p. 15.] Med-1 was not a debt collector with respect to the Community Health Gallahue debts at the time Kinnick's attorney sent the debt dispute letter, because it had not yet been assigned those debts. Moreover, § 1692c(c) as written limits the prohibition to the specific debt at issue. Kinnick could not have requested, with his February 2019 letter, that Med-1 cease communicating with him in respect to a debt that was not assigned

15

to it until six weeks later. For these reasons, Med-1's motion for summary judgment is granted as to Kinnick's § 1692c(c) claim.

### D. Meaningful attorney review

Kinnick also argues that Med-1 violated § 1692e(3) because "the letter sent to Mr. Kinnick was ostensibly sent by one of Med-1's attorneys, even though there was no meaningful attorney review of his account prior to sending the attorney collection letter[.]" [Filing No. 60, at ECF p. 2 (internal citation omitted).] Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, including the false representation or implication that any individual is an attorney or any communication is from an attorney. *See* 15 U.S.C. § 1692e(3).

The Court need not address the substantive arguments surrounding this claim, however, because it fails procedurally. Kinnick has asserted this § 1692e(3) claim for the first time in his motion for summary judgment. Under Fed. R. Civ. P. 16(b)(4), a party must set forth good cause to amend a Case Management Plan. Here, the amended CMP required the party with the burden of proof to file a statement of claims, stating specifically the legal theories upon which those claims are based, by June 19, 2020. [Filing No. 32, at ECF p. 6.] Moreover, the deadline to amend the pleadings passed even earlier, on January 27, 2020. [Filing No. 32, at ECF p. 4.] A § 1692e(3) claim did not appear in his complaint. [Filing No. 1.] Similarly, Kinnick makes no mention of this claim in his statement of claims. [Filing No. 50.] And Kinnick has not set forth good cause to allow an amendment, or raised any credible argument for a constructive amendment of his complaint. Med-1 would be unduly prejudiced by allowing Kinnick to amend his complaint and add this claim now, after discovery has closed, Kinnick has been deposed, and

16

summary judgment briefing was in progress.  Accordingly, Med-1's motion for summary judgment is granted as to Kinnick's purported §1692e(3) claim.

### IV. Conclusion

For the reasons stated above, Kinnick's motion for summary judgment [Filing No. 60] is denied, and Med-1's motion for summary judgment [Filing No. 64] is granted as to Kinnick's claim that Med-1 violated § 1692e(3) by sending a collection letter with no meaningful attorney review, but denied as it relates to Kinnick's claim that Med-1 violated § 1692e and §1692c(c) by attempting to collect a debt that was subject to bankruptcy and for which he had demanded that collection communications cease.  The Court will provide information in a separate order setting a telephonic status conference to reset case deadlines and finalize a new trial date.

Date: 6/4/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email